UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BGHN HOLDINGS LLC, a Delaware limited liability company,<br><br>         Plaintiff,<br><br>v.<br><br>KINGSTON-ULSTER AIRPORT, INC., a New York corporation,<br><br>         Defendant. | Civil Action No. 1:20-CV-0532 (GLS/CFH)<br><br>Hon. JUDGE<br><br>**COMPLAINT** |

## I. COMPLAINT

Plaintiff BGHN Holdings LLC ("BGHN") by its attorneys, Cook, Netter, Cloonan, Kurtz & Murphy, P.C. states as follows:

### Parties and Jurisdiction

1. BGHN is a Delaware limited liability company headquartered in Palo Alto, California.

2. Defendant Kingston-Ulster Airport, Inc. ("Landlord") is a New York corporation owning real property in Ulster County, New York with a principal place of business in the Town of Ulster, County of Ulster, State of New York.

3. Non-party Bridgeview Heliport, LLC ("Bridgeview") is a New York limited liability company headquartered in the Town of Saugerties, County of Ulster, State of New York.

4. This dispute concerns real property located adjacent to the Kingston Ulster Airport ("Airport") in the Town of Ulster, State of New York.

5. Complete diversity exists amongst the parties and the amount in controversy of this dispute exceeds $75,000.00.

1

6. This Court has diversity jurisdiction over the dispute and venue is appropriate because the subject property is located in this judicial district and the subject contract has been performed in this judicial district.

## Facts

### The Leasing Documents

7. Landlord owns the Airport and adjacent real properties, including a 10.193 acre parcel used as a heliport including a landing pad, taxi way, aircraft parking ramp, hangar, motor vehicle parking lot, and vehicular ingress/egress road easement to the heliport (collectively, "Heliport").

8. Bridgeview leases the Heliport from Landlord pursuant to a long-term Hangar Lease Agreement, dated September 14, 2018 (as amended, modified, and/ or supplemented by a Hangar Lease Agreement, dated September 19, 2018, an Addendum and Clarification, dated May 9, 2019, and a Second Amendment to Hangar Lease Agreement, dated July 26, 2019) (collectively, the "Master Lease"). Each of these four documents was executed for Landlord by Christine Seward, Landlord's Chief Financial Officer ("CFO").

9. BGHN subleases the Heliport from Bridgeview pursuant to a long-term Hangar Sublease Agreement, dated August 20, 2019 ("Sublease"). The Sublease contains a confidentiality provision, but a Memorandum of Hangar Sublease Agreement outlining certain basic terms of the Sublease was publicly recorded in the Ulster County real property records on October 16, 2019.

10. BGHN's right to occupy and use the Heliport are further secured by a Memorandum of Lease, Subordination, Nondisturbance, Estoppel and Attornment Agreement, also dated August 20, 2019 ("Non-Disturbance Agreement"). The Non-Disturbance Agreement is executed by BGHN, Bridgeview, and Landlord. Christine Seward, Landlord's CFO, executed the Non-Disturbance Agreement on

Landlord's behalf, and the Non-Disturbance Agreement was publicly recorded in the Ulster County real property records on October 16, 2019.

11. In the Non-Disturbance Agreement, Landlord makes various representations and promises to BGHN, including, without limitation, Landlord promises not to "terminate, impair or disturb the possession of the [Heliport] by [BGHN]." Furthermore, Landlord made a representation to BGHN in the Non-Disturbance Agreement that "there does not exist any default, claim, controversy or dispute under the Master Lease." Additionally, the Non-Disturbance Agreement requires Landlord to attorn to BGHN in the event Landlord ever terminated the Master Lease. Indeed, the Non-Disturbance Agreement expressly states that such attornment shall be "automatic and self-operative." Pursuant to the attornment provision of the Non-Disturbance Agreement, if Landlord ever terminated the Master Lease, then Landlord, as lessor, and BGHN, as lessee, would be obligated under the Sublease for the remainder of the term of the Sublease. By its terms, the Non-Disturbance Agreement is binding upon and inures to the benefit of the successors and assigns of Landlord, Bridgeview, and BGHN. BGHN relied on these representations of Landlord when BGHN simultaneously entered into the Sublease.

**Landlord's Attempted Sale of the Property**

12. In late 2019, in connection with an anticipated sale of the Airport, Landlord requested that Bridgeview sign an addendum to the Master Lease ("Addendum") with the primary intent of causing Bridgeview to relinquish a right of first refusal that Bridgeview enjoyed under the Master Lease. Under the Sublease, BGHN has the right to approve of any changes that Bridgeview makes to the Master Lease. Accordingly, Bridgeview asked BGHN if BGHN approved of Bridgeview executing the Addendum.

13. Upon learning of the potential sale of the Airport, BGHN sought to obtain more information about the sale and the prospective buyer. BGHN wanted to confirm that any prospective purchaser would respect BGHN's rights and Landlord's obligations under the Sublease and Non-

3

Disturbance Agreement. BGHN was concerned that if the prospective buyer sought to rezone the Airport for a non-airport use, or allowed the Airport's various certifications and licenses to lapse, the viability of the Sublease and BGHN's peaceful use of the Heliport could be jeopardized. Accordingly, BGHN sought reasonable assurance from Landlord that the prospective buyer would honor its obligations under the Non-Disturbance Agreement.

14. Despite BGHN's reasonable and good faith efforts, Landlord failed to provide assurances regarding BGHN's concerns. Landlord refused to disclose the identity of its potential buyer (other than to mention it was a "developer"), refused to provide assurances that the buyer intended to continue to operate the Airport, and promptly sent litigation hold notices to BGHN, Bridgeview, and Ms. Seward, who had since left Landlord's employ.

15. Because of Landlord's refusal to provide these reasonable assurances, BGHN was unable to consent to Bridgeview's execution of the proposed Addendum and the Addendum was never signed.

**The Airport's Purported Notice of Termination of Tenancy**

16. Throughout early 2020, representatives of BGHN and Landlord engaged in discussions aimed at resolving the foregoing issues, including the possibility that BGHN would purchase the entire Airport, the Heliport and other surrounding property or just the Heliport and other surrounding property.

17. However, on April 15, 2020, Landlord served both Bridgeview and BGHN with a Notice of Default, alleging that Bridgeview was in violation of its Master Lease of the Heliport..

18. Landlord followed up with an Amended Notice of Default, dated April 22, 2020, which was also served on both Bridgeview and BGHN. The Amended Notice of Default alleges three purported grounds for default:

    1. Alleged discharge of fill by Bridgeview onto protected wetlands;

4

   2. Failure to obtain Federal Aviation Administration ("FAA") approval before constructing the Heliport; and

   3. Unlawful creation of the September 19, 2018 Hangar Sublease Agreement.

  19. All of these allegations were items which were known or should have been known by Landlord at the time it executed the Non-Disturbance Agreement representing to BGHN that "there does not exist any default, claim, controversy or dispute under the Master Lease." Furthermore, notwithstanding these allegations: (1) there are no protected wetlands located on the Heliport property; (2) it is BGHN's understanding that FAA approval was not needed for construction of any of the Heliport improvements as, all improvements were approved by Landlord and the Town of Ulster prior to the commencement of construction; and (3) the September 19, 2018 Hangar Sublease Agreement was executed by Ms. Seward, a duly authorized officer of Landlord.

  20. Throughout the first four months of 2020, Landlord's representatives advised BGHN's representatives that Landlord did not have a fully executed copy of the Sublease. Landlord demanded that BGHN produce a copy of the Sublease as well as "proof" that it was executed in 2019. BGHN declined to provide Landlord with a fully executed copy of the Sublease, advised Landlord of the Sublease's confidential nature, pointed out that the Memorandum of Hangar Sublease Agreement was a publicly recorded document, and reminded Landlord of its obligations under the Non-Disturbance Agreement.

  21. On May 7, 2020, representatives of Landlord advised representatives of BGHN that Landlord did not believe the Sublease was confidential and stated that Landlord planned to share its partially signed copy of the Sublease with an undisclosed prospective third-party buyer.

  22. Also on May 7, 2020, Landlord posted a Notice of Termination of Lease at the Heliport, demanding that Bridgeview and BGHN vacate the Heliport.

23. During a Spring 2020 phone call, Landlord's representatives advised BGHN's representatives that Landlord and its potential buyer were committed to either modifying BGHN's sublease or else removing BGHN and Bridgeview from possession of the Heliport. If true, this would represented a joint effort by Landlord and its buyer to undermine the Hangar Sublease and facilitate Landlords' breach of the Non-Disturbance Agreement.

### First Cause of Action – Injunction

24. As described above, Landlord has threatened to violate the confidentiality provisions of the Sublease by disclosing the document to an undisclosed third party.

25. BGHN would suffer irreparable harm by such disclosure, which could not be remedied by money damages.

26. BGHN is entitled to a preliminary and/or permanent injunction enjoining such disclosure of the Sublease by Landlord.

### Second Cause of Action - Declaratory Judgment

27. Landlord's actions described above seek to eliminate BGHN's subleasehold rights in the Heliport. Accordingly, BGHN seeks a declaratory judgment that (1) neither BGHN nor Bridgeview is in breach of any lease agreement; (2) the Non-Disturbance Agreement remains a valid and enforceable obligation of Landlord and its successors or assigns; and (3) BGHN has the right to continue possessing and using the Heliport during the remainder of its Sublease term and any extension thereof.

### Third Cause of Action – Breach of Contract

28. The Non-Disturbance Agreement is a valid and enforceable contract between Landlord and BGHN.

29. Landlord has breached the Non-Disturbance Agreement by, without limitation, (1) serving an improper and wrongful Amended Notice of Default, (2) seeking to terminate BGHN's

possessory rights for alleged "defaults" that Landlord previously represented to BGHN did not exist and were in fact Landlord's responsibility, (3) threatening to disclose a complete copy of the Sublease to a third party without the consent of BGHN, and (4) breaching other contractual obligations of Landlord to BGHN.

30. BGHN is entitled to a permanent injunction prohibiting Landlord from interfering with BGHN's possessory rights to the Heliport as well as contractual damages in an amount to be proven at trial.

### Fourth Cause of Action – Intentional Interference with Contractual Relations

31. The Sublease is a valid and enforceable contractual agreement between Bridgeview and BGHN.

32. Landlord has knowledge of the Sublease and specifically consented to the Sublease as "Head Lessor" in the Non-Disturbance Agreement and other documents.

33. Landlord's actions, including the service of Notice of Default and Amended Notice of Default, were wrongful and without legal justification.

34. By virtue of these actions, Landlord has intentionally interfered in BGHN's contractual relations with Bridgeview, damaging BGHN in an amount to be proven at trial.

### Fifth Cause of Action – Intentional Misrepresentation

35. Upon information and belief, Landlord's sole principal, Randi Zinn, has been planning on selling the Airport and surrounding property for a considerable period of time.

36. Upon information and belief, Ms. Zinn intended to sell the Airport, Heliport and surrounding property in August 2019.

37. Upon information and belief, the prospective purchaser(s) of the Airport and Heliport in August 2019 intended to discontinue use of the Airport and Heliport as an airport following their purchase and redevelop the property for commercial or residential use.

38. Upon information and belief, Ms. Zinn knew of this intention in August 2019.

39. Notwithstanding this knowledge, Landlord executed the Non-Disturbance Agreement on August 20, 2019, knowing that the prospective purchaser's business plan depended upon not honoring the Non-Disturbance Agreement.

40. BGHN would not have entered into the Sublease were it not for the assurances made by Landlord in the Non-Disturbance Agreement.

41. Landlord's actions described above constitute intentional misrepresentations, which have damaged BGHN in an amount to be proven at trial.

## Sixth Cause of Action – Notice of Pendency

42. Contemporaneous with the filing of this lawsuit, BGHN intends to file a Notice of Pendency with the County of Ulster, giving notice that this action affects title to the Heliport.

## 1) REQUEST FOR RELIEF

Based on the foregoing, BGHN requests the following relief:

1. A declaratory judgment as described above and as may be modified by the facts and legal conclusions established in the course of this lawsuit;

2. A preliminary and/or permanent injunction prohibiting Landlord from (1) violating the SNDA or the Sublease; (2) interfering with BGHN's possessory rights of the Heliport; or (3) disclosing the terms of the confidential Sublease to a third-party;

3. Judgment against Landlord in an amount to be proven at trial;

4.  An award of attorney fees, costs, expenses, and pre and post-judgment interest as may be allowed by the parties' contracts and applicable law;

5..  Special, punitive, and/or exemplary damages as may be allowed under applicable law; and

6.  Other such relief as the Court deems just and proper.

DATED: May 11, 2020

By _/s/ Eric M. Kurtz_
Cook, Netter, Cloonan, Kurtz & Murphy, P.C.
Eric M. Kurtz, Esq. #103869
ekurtz@cookfirm.com
*Attorneys for Plaintiff*
85 Main Street, P.O. Box 3939
Kingston, New York 12402
(845) 331-0702