UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BGHN HOLDINGS LLC, | Case No.:  1:20-cv-00532 (GLS/CFH) |
| Plaintiff, | |
| v. | Jury Trial:  _X_ Yes    __ No |
| KINGSTON-ULSTER AIRPORT, INC., | |
| Defendant/Counterclaimant | |
| v. | |
| BRIDGEVIEW HELIPORT, LLC, JEFFREY LYONS, and CHRISTINE SEWARD, | |
| Counterclaim Defendants | |

## ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIMS

Defendant/Counterclaimant Kingston-Ulster Airport, Inc. ("KUA") submits this answer and counterclaims to BGHN Holdings, LLC's ("BGHN") Amended Complaint as follows:

## ANSWER TO THE AMENDED COMPLAINT

1.      Admitted that BGHN is a Delaware limited liability company. Defendant has insufficient information to admit or deny the remaining allegations contained in this paragraph and leaves Plaintiff to its proofs.

2.      Admitted that Defendant KUA is a New York corporation owning real property in Ulster County, New York, with a principal place of business in the Town of Ulster, County of Ulster, New York. To the extent in this paragraph Plaintiff is implying/suggesting that a September 19, 2018 document is a valid lease, such implication/suggestion is denied.

5005760.1

3.      Admitted that Bridgeview is a New York limited liability company headquartered in New York, but denied that Bridgeview is a non-party as it is joined to this case by KUA.

4.      Admitted.

5.      The statement contains legal conclusions to which no response is required.

6.      The statement contains legal conclusions to which no response is required, except for the statement that the "subject contract has been performed in this judicial district," which Defendant denies because Defendant does not know what contract Plaintiff is referring to.

7.      Defendant admits that it owns the Airport, adjacent properties, including a 10.193 acre parcel, and denies the remaining allegations in this paragraph.

8.      Denied. Bridgeview leases the Heliport pursuant to a September 14, 2018 lease, which has only been amended twice: a May 9, 2019 Lease Addendum and Clarification and a second amendment in July of 2019.    Defendant denies there exists a "Hangar Lease Agreement, dated September 19, 2018," since that claimed lease is invalid and fake (hereinafter the "Fake September 19, 2018 Lease.")

9.      Denied.

10.      Denied.

11.      Denied.

12.      Denied. Defendant admits that it sought to have Bridgeview admit the Fake September 19, 2018 Lease was invalid (since it is) and that the rights of first refusals within that document are also invalid (since they are).

13.      Denied.

14.      Defendant admits it sent litigation hold letters and denies the remaining allegations in this paragraph.

15.      Denied. Plaintiff interfered with Bridgeview acknowledging and admitting (as it should) that the Fake September 19, 2018 Lease is invalid.

16.      Denied.

17.      Admitted that Defendant served Notices of Default on Bridgeview and BGHN on April 15, 2020.  Defendant denies the remaining allegations of this paragraph as the document speaks for itself.

18.      Admitted that Defendant served Amended Notice of Default, dated April 22, 2020, on Bridgeview and BGHN. Defendant denies the remaining allegations and sub-allegations of this paragraph as the document speaks for itself.

19.      Denied.

20.      Defendant admits that it repeatedly requested a copy of the alleged sublease and proof that it was executed in 2019 and BGHN has refused to provide a fully executed copy of its alleged sublease (if it exists). Defendant denies the remaining allegations in this paragraph.

21.      Admitted. Defendant notes that in paragraph 13 of its amended complaint Plaintiff is requesting certain "confirmation," from the buyer, but refuses to consent to allowing Defendant to provide a copy of its alleged sublease to the buyer.

22.      Admitted.

23.      Denied. However, Defendant admits that due to BGHN's and Bridgeview's unlawful conduct it seeks their eviction from the Heliport.

### First Cause of Action - Injunction

24.      Denied. Defendant has not been provided any copy of a fully executed sublease (if it actually exists); there is nothing confidential in the unexecuted sublease Defendant is in possession of; and there is nothing that binds Defendant to confidentiality.

25.      Denied.

26.      Denied.

## Second Cause of Action-Declaratory Judgment

27.      Denied.

## Third Cause of Action-Breach of Contract

28.      Denied.

29.      Denied.

30.      Denied.

## Fourth Cause of Action-Intentional Interference with Contractual Relations

31.      Denied.

32.      Denied.

33.      Denied.

34.      Denied.

## Fifth Cause of Action-Intentional Misrepresentation

35.      Denied as ambiguous, but admitted that the owner of the Airport has been planning on selling it and the surrounding properties.

36.      Admitted.

37.      Denied.

38.      Denied.

39.      Denied.

40.      Denied.

41.      Denied.

**Sixth Cause of Action-Notice of Pendency**

42.      Defendant admits that Plaintiff filed a Notice of Pendency and denies the remaining allegations of this paragraph.

**1) PLAINTIFF'S REQUEST FOR RELIEF**

1.      Denied that Plaintiff is entitled to a declaratory judgment.

2.      Denied that Plaintiff is entitled to either a preliminary and/or permanent injunction.

3.      Denied that Plaintiff is entitled to judgment against Defendant.

4.      Denied that Plaintiff is entitled to attorneys' fees, costs, expenses, and pre and post-judgement interest.

5.      Denied that Plaintiff is entitled to special, punitive, and/or exemplary damages.

6.      Denied that Plaintiff is entitled to any relief and denied that Plaintiff is entitled to equitable relief.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

43.      BGHN fails to state a cause of action upon which relief may be granted against the Defendant. Defendant reserves the right to move to dismiss BGHN's claims at any time prior to, at, or during trial.

**SECOND AFFIRMATIVE DEFENSE**

44.      There exists no valid contract between Defendant and BGHN.

## THIRD AFFIRMATIVE DEFENSE

45.     The Fake September 19, 2018 Lease is not a valid contract.

## FOURTH AFFIRMATIVE DEFENSE

46.     There is no consideration for the Non-Disturbance Agreement, Fake September 19, 2018 Lease (and the alleged right of first refusals thereunder) and the alleged sublease.

## FIFTH AFFIRMATIVE DEFENSE

47.     The Non-Disturbance Agreement, Fake September 19, 2018 Lease (and the alleged right of first refusals thereunder) and the alleged sublease are unconscionable.

## SIXTH AFFIRMATIVE DEFENSE

48.     The Non-Disturbance Agreement and the Fake September 19, 2018 Lease (and the alleged right of first refusals thereunder) are the product of fraud.

## SEVENTH AFFIRMATIVE DEFENSE

49.     Bridgeview and BGHN breached their agreements.

## EIGTH AFFIRMATIVE DEFENSE

50.     KUA has no duty to BGHN.

## NINTH AFFIRMATIVE DEFENSE

51.     KUA breached no duty or obligation.

## TENTH AFFIRMATIVE DEFENSE

52.     If BGHN is conducting business in New York its claims are barred by N.Y. B.C.L. 1312(a).

## ELEVENTH AFFIRMATIVE DEFENSE

53.     BGHN incurred no damages.

## TWELTH AFFIRMATIVE DEFENSE

54.    Any harm suffered by BGHN is a result of its own bad actions.

### THIRTEENTH AFFIRMATIVE DEFENSE

55.    BGHN's causes of actions are barred by its own breaches.

### FOURTEENTH AFFIRMATIVE DEFENSE

56.    BGHN's claims are barred by its own breaches.

### FIFTEENTH AFFIRMATIVE DEFENSE

57.    BGHN's are diminished by its own breaches.

### SIXTEENTH AFFIRMATIVE DEFENSE

58.    BGHN is barred from any recovery due to its unclean hands.

### COUNTERCLAIMS/COUNTERCLAIM PLEADING

59.    Portions of this Counterclaim Pleading are redacted based on the demands of Plaintiff. Defendant objects to these redactions and believes that nothing in this pleading should be redacted. Defendant objects to Plaintiff's claims of confidentiality. Further, Defendant asserts that it is Plaintiff's burden to demonstrate that any redactions are warranted. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004). Defendant would oppose any motion to seal.

### I.    The Parties

### A.    Plaintiff to the Complaint

60.    BGHN filed an amended complaint against Defendant/Counterclaimant Kingston-Ulster Airport, Inc. ("KUA").

### B.    The Defendant/Counterclaimant

61.    Counterclaimant is KUA, a corporation and citizen of New York, owning properties in Ulster County, New York. KUA's principal place of business is 1151 Flatbush Road, Kingston, New York, 12401.

7

### C.      Counterclaim Defendants

62.      BGHN is a Counterclaim defendant.

63.      Counterclaim Defendant Bridgeview Heliport, LLC (hereafter "Bridgeview") is a New York limited liability company, a citizen of New York, and with an address of 28 Dave Elliot Road, Saugerties, New York 12477.  Jeffrey Lyons ("Lyons") is a citizen of New York and on information and belief is either the sole member of Bridgeview or Lyons and Bill Spadafora (also on information and belief a citizen of New York) are the two members of Bridgeview.

64.      Counterclaim Defendant Lyons is a citizen of New York, with an address of 28 Dave Elliot Road, Saugerties, New York 12477.

65.      Counterclaim Defendant Christine Seward ("Seward") is currently a citizen of Florida, residing at 2804 Sarento Place, #109, Palm Beach Gardens, FL 33410. Seward was previously employed by KUA and resided in the State of New York, including at the following addresses:  9 Valdine Road, New Paltz, NY, 12561 and 15 Maplebrook Lane, New Paltz, NY 12561.

### III.      Jurisdiction

66.      The Court has jurisdiction over Counterclaim Defendants Bridgeview, Lyons, and Seward pursuant to 28 U.S. Code § 1367.

### IV.   Facts

### A.      Preliminary Statement

67.      Counterclaimant KUA is the owner of the property with the tax identification number of SBL 40.17-1-19.110 (the "Property") which is located in the Town of Ulster, County of Ulster and State of New York.  Tax parcel SBL 40.17-1-19.110 is approximately 47 acres, all of which is owned by Counterclaimant KUA.

68.     Counterclaimant KUA acquired the 47 acres pursuant to two separate deeds. First, KUA acquired 10.11 acres that make up the Property pursuant to a deed dated October 26, 1987, which was recorded on November 9, 1987 at Liber 1769, cp 266.  Second, KUA acquired the remaining 36.90 acres of that makes up the Property pursuant to a deed dated June 27, 1997, which was recorded on July 8, 1997 at Liber 2699, cp 266, in the Ulster County Clerk's Office.

69.     The Property is situated within the territorial jurisdiction of the New York State Supreme Court, Third Judicial District. The Property is not subject to any rent stabilization or rent regulation laws because it is used solely for commercial purposes.

70.     The Property is not a multiple dwelling.

71.     Counterclaim Defendant Bridgeview leased 10 acres located on part of the Property pursuant to a September 14, 2018 (the "Actual September 14, 2018 Lease"). Plaintiff refers to those 10 acres as a "Heliport."

72.     There are no rights of first refusals in Bridgeview's actual lease.

73.     A right of first refusal is detrimental because it limits a property owner's right to dispose freely of his property by compelling the owner to offer it first to the party who has the first right to buy.

74.     Counterclaim Defendant Lyons is the member and manager of Bridgeview.

75.     Counterclaim Defendant Seward is the former Financial Director and Comptroller of Counterclaimant KUA who worked for it from August of 2017 until September 3, 2019.

76.     On information and belief, Counterclaim Defendants Seward and Lyons had some form of personal relationship and were living together in the summer and fall of 2019.

77.     In 2019 Seward claimed to be suffering from financial problems.

78.     In July of 2019 Seward reported that Lyons, the owner of Bridgeview, paid her

money, which on information and belief was between $8,000 to $10,000.

79.     BGHN and Lyons/Bridgeview had some form of relationship dating back to at least August of 2014.

80.     In August of 2019, prior to any execution of any alleged sublease (if it exists), both BGHN and Lyons/Bridgeview expressed interest in buying the Heliport.

81.     In the summer of 2019 BGHN also sought to sublease the Heliport from Bridgeview.

82.     BGHN claims to "sublease[] the Heliport from Bridgeview pursuant to a long-term Hangar Sublease Agreement," it allegedly executed on August 20, 2019.

83.     Counterclaimant KUA requested from BGHN a signed copy of its alleged sublease, but it never produced a fully executed copy of the alleged sublease.

84.     Counterclaimant KUA does not believe that BGHN has an actual executed sublease. Thus, BGHN is unlawfully occupying the Heliport.

85.     Counterclaimant KUA does have an unexecuted copy of a July 2019 alleged sublease between BGHN and Bridgeview     REDACTED

86.     Section 2 of the alleged sublease provides the following:

          REDACTED

87.     Section 3 of the alleged sublease provides the following:

          REDACTED

REDACTED

88.        Thus, the alleged sublease provides     REDACTED

89.        Further, the alleged sublease is     REDACTED

90.         The Non-Disturbance Agreement provides that if Counterclaimant KUA were to evict Bridgeview (who had a relationship with BGHN dating back to at least 2014), the "Sublease will continue as a direct lease between," BGHN and Counterclaimant KUA.

91.        BGHN drafted both the alleged sublease and the Non-Disturbance Agreement.

92.        An owner of property obviously has a right     REDACTED

93.        Thus, BGHN and Bridgeview/Lyons drafted contracts which purported to provide that     REDACTED

94.     The "Non-Disturbance Agreement," was executed by Bridgeview/Lyons and BGHN. Further, BGHN alleges that the "Non-Disturbance Agreement," was executed by Seward.

95.     The Non-Disturbance Agreement is dated August 20, 2019, however the notary blocks reflect that all parties signed the Non-Disturbance Agreement after that date.

96.     Seward allegedly signed the Non-Disturbance Agreement on September 9, 2019, which was after her employment ceased with Counterclaimant KUA. Seward did not have the authority to sign the agreement.

97.     BGHN subsequently filed the Non-Disturbance Agreement with Ulster County. However, while the Non-Disturbance Agreement states that Exhibit A to it is a sublease, no sublease is attached and moreover a paragraph regarding the sublease has been crossed out.

98.     No consideration was paid by BGHN to Counterclaimant KUA for the Non-Disturbance Agreement.

99.     BGHN also created a "Memorandum of Hangar Sublease Agreement," which it filed with Ulster County.  In the Memorandum of Hangar Sublease Agreement (a) BGHN claims it has a "right of first refusal to sublease the," Heliport and (b) BGHN states the "terms…of the Sublease are incorporated in this Memorandum as though written out at length herein."

100.    At the time Seward allegedly signed the Non-Disturbance Agreement she was working in concert with BGHN, Lyons and Bridgeview in the commission of various torts against Counterclaimant KUA.

101.    Further, BGHN subsequently sought to purchase the Heliport and as described below, it controls Bridgeview and asserts there is a right of first refusal to purchase the Heliport, which it knows is invalid.

**B.      Eviction and Breach of Lease**

102.      On April 22, 2020, Counterclaimant KUA served a Notice of Default of the Actual September 14, 2018 Lease on Bridgeview. The Notice of Default was also served on BGHN due to its unlawful occupancy and breach of its claimed sublease (if it even exists).

103.      On May 12, 2020, Counterclaimant KUA served a Notice of Termination of the Actual September 14, 2018. The Notice of Termination was also served on BGHN due to its unlawful occupancy and breach of its claimed sublease (if it even exists). Thus, Bridgeview and BGHN were required to vacate the Heliport on June 10, 2020, but both continue to occupy the Heliport.

104.      Bridgeview's Actual September 14, 2018 Lease has been terminated by reason of its violations of the agreement.

105.      Under Section 1 of the Actual September 14, 2018 Lease, when performing its construction of the Heliport, Bridgeview was required to comply with "NYS Building and Fire code and the laws, rules and regulations of the Town and County of Ulster, State of New York and the Federal Aviation Administration and pursuant to the engineered plans that are supplied with the hangar materials."

106.      Further, Section 6C of the Actual September 14, 2018 prohibited   "Any unlawful activity…."

107.      Section 7 of the Actual September 14, 2018 Lease prohibits "disturb[ance] or remov[al of] any rocks or soil, [ ] [or] alter[ing] the property without the Lessor's prior written consent."

108.      Section 9A of the Actual September 14, 2018 Lease required  Bridgeview to maintain the Heliport "in the same condition, with the exception of normal wear and tear, as of the day Lessee first took possession of the Leased Premises."

109.     Section 9D, of the Actual September 14, 2018 Lease prohibited Bridgeview from "mak[ing] alterations, additions, or improvements to or about the Leased Premises, without written consent of the Lessor, which consent may be withheld by Lessor at Lessor's sole discretion."

110.     Section 9H of the Actual September 14, 2018 Lease provides that "Lessee shall be responsible to cover the cost of any repairs to the Lessor's property…."

111.     Section 11 of the Actual September 14, 2018 Lease provides that "Lessee agrees to defend, indemnify and hold harmless Lessor its officers, agents, directors shareholders…from and against any and all injury, loss, damage, liability claims, costs or expenses including reasonable attorneys' fees and court costs, arising directly or indirectly out of the use, maintenance or occupancy of the Leased Premises or breach of any provision of this Lease Agreement, except to the extent solely attributable to the intentional act or omission of Lessor, its employees or agents."

112.     Section 9 of the Actual September 14, 2018 Lease  requires that in the event of a default, "Lessee shall be required to pay all costs, expenses, and disbursements and reasonable legal fees incurred by the Lessor as a result of said default. In addition, the Lessee shall be responsible for costs, expenses and financial losses suffered by the Lessor arising from said default."

113.     Section 12 of the Actual September 14, 2018 Lease provides that "[i]f Lessee remains on the Leased Premises beyond the expiration or other termination date, Lessee shall be considered holding over and shall remain liable for 120% of the then current lease amount…."

114.     Section 13 of the Actual September 14, 2018 Lease requires Bridgeview to maintain the following insurance: (a) Comprehensive General Liability Insurance in the amount of $2 million; (b) Automobile Liability Insurance in the amount of $500,000; (c) Aircraft Liability Insurance in the amount of $1,000,000; (d) an umbrella policy in the amount of $5,000,000; and (e) workers' compensation insurance in the amounts required under the law.

5005760.1

115.     For all of the policies listed in Section 13, except for the workers compensation policy, Bridgeview was required to name Counterclaimant KUA as an additional insured on such policies and deliver proof of same to Counterclaimant KUA on execution of the Actual September 14, 2018 Lease and annually thereafter.

116.     For all the policies listed in Section 13, Bridgeview was required to deliver to Counterclaimant KUA an endorsement from the issuers of such policies and such endorsement was required to provide, among other things, that the policies listed in Section 13 shall not be cancelled without 30 days' notice to Counterclaimant KUA.

117.     Bridgeview breached Section 1 of its Actual September 14, 2018 Lease by constructing and operating a heliport on a portion of the Property without first notifying and obtaining approval from the Federal Aviation Administration ("FAA"), contrary to regulations 14 C.F.R. 157 § *et seq*.

118.     Additionally, Bridgeview breached Sections 6C and 10 of its Actual September 14, 2018 Lease because it operated helicopters from the heliport when the heliport was never approved by the FAA. Bridgeview also breached these sections by accessing an adjacent airport (owned by Counterclaimant KUA) without an FAA required through the fence agreement.

119.     Additionally, Bridgeview's breached Section 6C of its Actual September 14, 2018 by committing various torts (plead in this pleading), which are unlawful, against Counterclaimant KUA.

120.     Bridgeview also breached Section 6C the Actual September 14, 2018 Lease by unlawfully created and/or participated in the creation of what its claims is the September 19, 2018 lease (the "Fake September 19, 2018 Lease").

121.     Bridgeview's breached Sections 7 and 9D of the Actual September 14, 2018 Lease

by, in 2020, disturbing the soil and altering the Heliport/Property (including by adding fill)  without Counterclaimant KUA's permission.

122.     Bridgeview even bulldozed the "No Dumping," sign (which was put up in response to Bridgeview's unauthorized activities).

123.     Bridgeview breached Section 13 of the Actual September 14, 2018 Lease because it failed to name Counterclaimant KUA as an additional insured on its Comprehensive General Liability, Automobile Liability, Aircraft Liability, and Umbrella insurance policies and deliver proof of same to Counterclaimant KUA on execution of the Actual September 14, 2018 Lease and annually thereafter and failed to deliver to Counterclaimant KUA the endorsement required by Section 13 of the Actual September 14, 2018 Lease.

124.     Bridgeview also breached the covenant of good faith and fair dealing in the Actual September 14, 2018 Lease by its: (a) unlawful participation in the creation of the Fake September 19, 2018 Lease; (b) its unlawful activity in creating, and/or refusing to allow Counterclaimant KUA to be released from the Fake September 19, 2018 Lease and the invalid rights of first refusal in the Fake September 19, 2018 Lease; (c) commission of various torts (plead in this complaint) which are unlawful; (d) participation in creating the alleged sublease and the Non-Disturbance Agreement

REDACTED

(e) interfering with the sale of the Property/Heliport; and (f) ignoring Counterclaimant KUA's instructions.

125.     While the Fake September 19, 2018 Lease was speciously and wrongly created, unauthorized  and is invalid, even if the Court were to conclude otherwise, the provisions for which Bridgeview is in default of under the Actual September 14, 2018 Lease are the same in the Fake September 19, 2018 Lease, with the exception that Section 9D of the Actual September 14, 2018 Lease

is Section 9C in the Fake September 19, 2018 Lease; Section 9H in the Actual September 14, 2018

Lease is section 9G in the Fake September 19, 2018 Lease; and Section 13 in the Actual September 14,

2018 Lease is Section 14 in the Fake September 19, 2018 Lease. Thus, even if the Fake September 19,

2018 Lease were valid (which it is not), Bridgeview is in breach of that lease for the same reasons it is

in breach of the Actual September 14, 2018 Lease.

126.     As BGHN does not have a fully executed sublease it has no right to occupy the

Heliport and thus must vacant the Property.

127.     Even if BGHN does have a fully executed sublease, it is in breach of it.

128.     Section 6. C of the alleged sublease provides the following:

REDACTED

129.     BGHN has breached Section 6 of its alleged sublease (if it exists) by: (a)

REDACTED

REDACTED

130.     Further, if BGHN's alleged sublease exists, BGHN has breached the covenant of good faith and fair dealing in its alleged sublease for all the reasons listed in (a) to (g) of the prior paragraph.

**C.     Breach of "Non-Disturbance Agreement"**

131.     No consideration was paid for the Non-Disturbance Agreement, which is also a breach.

132.     Seward did not have the authority to bind Counterclaimant KUA

REDACTED

133.     Even if the Non-Disturbance Agreement was valid (which it is not), Bridgeview breached the Non-Disturbance Agreement by breaching its Actual September 14, 2018 Lease as described above.  Further, even if the Fake September 19, 2018 Lease was a valid lease (which it is not), Bridgeview Breached the Non-Disturbance Agreement by breaching the Fake September 19, 2018 Lease, as described above.

134.     BGHN also breached the alleged Non-Disturbance Agreement by breaching its alleged sublease (if it exists), as described above.

135.     Further, both Bridgeview and BGHN breached the alleged Non-Disturbance Agreement by their breach of the covenant of good faith and fair dealing by their: (a) unlawful participation in the creation of the Fake September 19, 2018 Lease; (b) unlawful activity in creating, and/or refusing to allow Counterclaimant KUA to be  released from the Fake September 19, 2018 Lease and the invalid rights of first refusal in the Fake September 19, 2018 Lease; and (c) its commission of various torts (plead in this complaint) which are unlawful.

**D.     Fake September 19, 2018 Lease**

136.     The Actual September 14, 2018 Lease is the only lease between Bridgeview and Counterclaimant KUA.

137.     There are no rights of first refusal in the Actual September 14, 2018 Lease, but the Fake September 19, 2018 Lease contains the following three rights of first refusal: (a)  a right of first refusal "for all future lease agreement" (Section 3.A); (b) a right of first refusal to purchase the Heliport (Section 13), and (c) a right of first refusal to lease additional space within the Heliport (Section 21).

138.     In the summer of 2019 BGHN expressed interest in acquiring the Heliport.

139.     A few months later the Fake September 19, 2018 Lease appeared.

140.     While the Actual September 14, 2018 Lease is the only lease between Bridgeview and Counterclaimant KUA, both Bridgeview and BGHN claim the Fake September 19, 2018 Lease is actually a valid lease.

141.     To the contrary, as described below, documents executed by Bridgeview and BGHN after September 19, 2018 demonstrate they know the only valid lease between Bridgeview and Counterclaimant KUA is the Actual September 14, 2018 Lease.

142.     Even Bridgeview's attorney has stated in writing "[m]y understanding is 9/14 remains in effect with an addendum to be signed."

**E.     Through Their Actions BGHN, Bridgeview, Lyons and Seward Admit That the Fake September 19, 2018 Lease Is An Invalid Lease**

143.     On September 13, 2018, Seward emailed Bridgeview and Lyons a draft of the Actual September 14, 2018 Lease for execution. No right of first refusal existed in that draft.

19

144.     On September 14, 2018, Bridgeview, Lyons and Lyons' business partner (Bill Spadafora) executed the Actual September 14, 2018 Lease. No right of first refusal existed in that draft of the actual lease.

145.     Approximately seven months later, on April 19, 2019, Bridgeview requested a copy of its signed lease via email. The Actual September 14, 2018 Lease was emailed to Bridgeview on April 22, 2019 and on April 22, 2019 Bridgeview acknowledged receipt of the Actual September 14, 2018 Lease.

146.     On or about May 6, 2019, it is believed that counsel to BGHN sent an electronic communication to Lyons (the owner of Bridgeview), which discussed the provisions in a lease and those provisions only correspond to the Actual September 14, 2018 Lease.

147.     On May 9, 2019 Bridgeview signed a first lease amendment and that amendment only corresponds to sections in the Actual September 14, 2018 Lease.

148.     On July 22, 2019, counsel for BGHN emailed Bridgeview an "Execution version[]" of a "Second Amendment to Hangar Lease Agreement," which stated:  "Pursuant to a Hangar Lease Agreement dated as of September 14, 2018 between Lessor and Lessee which was amended by a 'Lease addendum and clarification' dated May 9, 2019 (as amended, the "*Lease Agreement*"), Lessor leased to Lessee and Lessee leased from Lessor the Leased Premises located at the Kingston-Ulster Airport in Kingston, New York on the terms and conditions contained therein;" (the "Second Amendment to the Actual September 14, 2018 Lease").

149.     In July of 2019 Bridgeview executed the Second Amendment to the Actual September 14, 2018 Lease ("Second Amendment to the Actual Lease") and that amendment specifically refers to the Actual September 14, 2018 Lease, which does not contain rights of first refusal.

150.    In its July 22, 2019 email counsel for BGHN also emailed Bridgeview an "Execution version[]" of a "Hangar Sublease Agreement," which provides that    REDACTED

REDACTED

151.    Bridgeview executed the alleged BGHN sublease.    REDACTED

152.    With its July 22, 2019, email counsel for BGHN also sent Bridgeview what it refers to as the "Non-Disturbance Agreement," in which it states:  "Head Lessor, as lessor and Sublessor, as lessee, entered into that certain Hangar Lease Agreement dated as of September 14, 2018 (the "***Master Lease***") whereby Head Lessor leases to Sublessor a parcel of real estate containing approximately 10.193 acres of land legally described on the attached **Exhibit A** together with certain improvements constructed thereon (collectively, the "***Leased Premises***") at the Kingston-Ulster Airport in Kingston, New York."

153.    On August 28, 2019 and September 3, 2019, BGHN and Bridgeview, respectively, executed the Non-Disturbance Agreement. This document does not contain any reference to a September 19, 2018 lease, just the Actual September 14, 2018 Lease, which does not contain any right of first refusal.

154.    On August 28, 2019, counsel for BGHN emailed Lyons/Bridgeview a Landlord Estoppel Certificate.  The only lease referenced therein was to the September 14, 2018 Actual Lease, which does not contain any rights of first refusal.

155.     Specifically, the Landlord Estoppel Certificate only referred to the "September 14, 2018," lease and amendments dated "May 9, 2019" and "July 26, 2019."

156.    On August 28, 2019, Lyons/Bridgeview emailed to Seward the Non-Disturbance Agreement and a Landlord Estoppel Certificate.  As noted above, neither of those documents reference a September 19, 2018 lease, just the Actual September 14, 2018 Lease which does not contain rights of first refusal.

157.    The foregoing demonstrates that on multiple occasions after execution of the September 14, 2018, Actual Lease and after September 19, 2018, Bridgeview, Lyons, BGHN and Seward executed documents that acknowledge the existence of the September 14 2018 Actual Lease (which does not contain rights of first refusal) and do not reference the Fake September 19, 2018 Lease (which contains rights of first refusal).

158.    The foregoing further demonstrates that BGHN, Bridgeview, Lyons (the owner of Bridgeview) and Seward knew and continue to know that the Fake September 19, 2018 Lease was and remains an invalid document since they all executed  documents in 2019 that only refer to the Actual September 14, 2018 Lease.

**F.    Creation of the Fake Lease**

159.    On March 1, 2019, Seward requested a Word version of Bridgeview's lease from an employee of Counterclaimant.

160.    On July 29, 2019, Seward emailed a word version of Bridgeview's lease to Lyons (the owner of Bridgeview).

161.     Counterclaimant KUA owns Kingston-Ulster Airport, Inc. (the "Airport"), the Property (a portion of which is occupied by the Heliport) and adjacent properties.

162.     Beginning in August of 2019 Counterclaimant KUA sought to sell the Airport, the Property and adjacent properties.

163.     Counterclaimant KUA wished to sell the Airport, the Property and the adjacent properties together.

164.     In August of 2019 Lyons/Bridgeview offered to purchase the Heliport for $75,000. The offer was rejected by Counterclaimant KUA because it was not interested in just selling the Heliport only and because the offer was otherwise too low.

165.     On or about August 17, 2019, Lyons recommended that Counterclaimant KUA contact BGHN about possibly acquiring the Heliport.

166.     In both August and September of 2019 BGHN, through its agent Thomas McCormick, expressed to Counterclaimant KUA its interest in acquiring the Heliport (but not the Airport or the adjacent properties).

167.     On August 17, 2019, Thomas McCormick, stated that he learned of the possibility of the sale of the Heliport from Lyons.

168.     Since Bridgeview, Lyons, BGHN and Seward were executing documents at least as late as August 28, 2019 that referenced the September 14, 2018 Actual Lease which did not contain rights of first refusal, the Fake September 19, 2018 Lease, which contained rights of first refusal was created sometime after August 28, 2019.

169.     Seward signed a resolution to which the Fake September 19, 2018 Lease is attached.

170.     Seward signed the resolution on **September 9, 2019** (i.e., approximately 1 year after date on the Fake September 19, 2018 Lease).

171.     Seward's signature was notarized in Florida on **September 9, 2019,** which is **six days** after Seward ceased employment with Counterclaimant KUA.

172.     Seward worked as Counterclaimant KUA's Financial Director and Comptroller.

173.      Seward owed a fiduciary duty to Counterclaimant KUA.

174.     On information and belief, in exchange for payment, housing, other benefits from Bridgeview or BGHN, and/or as part of her personal relationship, Bridgeview, Lyons, and BGHN induced Seward to breach her fiduciary duty to Counterclaimant KUA through her involvement in the creation of  the Fake September 19, 2018 Lease and to sign the Non Disturbance Agreement.

175.     Seward did not have authority to execute the Fake September 19, 2018, Lease containing the rights of first refusal or the Non-Disturbance Agreement, which

REDACTED

**G.     Refusal To Release the Invalid Right of First Refusal**

176.     As noted above, in 2019 Counterclaimant KUA decided to sell the Property along with Airport and several adjacent properties.

177.     In the fall of 2019 Counterclaimant KUA discovered the Fake September 19, 2018 Lease which has the invalid right of first refusal to purchase the Heliport.

178.     A bona fide buyer would want the cloud on the title to the Property caused by the invalid right of first refusal to be removed.

179.     Anticipating that issue, counsel for Counterclaimant KUA contacted counsel for Bridgeview in November of 2019 about the Fake September 19, 2018 Lease.

180.     On December 2, 2019, Counsel for Bridgeview agreed to "do away" with the invalid right of first refusals stating: "Bridgeview ok with doing away with right of first refusal as long as lease term as it currently exists is 10 years and rent 1100."

24

181.     However, BGHN (who is interested in purchasing the Property) refused to allow Bridgeview to "do away" with the invalid right of first refusals.

**H.     BGHN's Efforts To Purchase the Heliport**

182.     BGHN knew that the owner of Counterclaimant KUA only wanted a transaction to sell the Airport, Heliport and adjacent properties.

183.     A bona fide third party buyer does not want to be subject to the hazard of litigation, over the claimed invalid right of first refusal.

184.     BGHN is not subject to the hazard of litigation over the invalid right of first refusal because  it determines when it will be released.

185.     Thus, by having the power over when Bridgeview executes documentation acknowledging that the right of first refusal is invalid, BGHN prevents the sale of the Airport and Heliport from occurring.

186.     In early 2020, (a) BGHN submitted an offer to buy the Airport and the Property; (b) claimed it did not control Bridgeview and (c) conditioned closing of its offer on a waiver of the right of first refusal.

187.     Meaning, BGHN attempted to get the owner of Counterclaimant KUA to enter into a sales transaction where closing was conditioned on Bridgeview releasing its right of first refusal, while at the same time BGHN determines when that release will occur.

188.     As noted above on December 2, 2019 Bridgeview was agreeable to acknowledging the invalidity of the right of first refusal, but never did because, as admitted by BGHN in its complaint, BGHN refused to "consent to Bridgeview's execution of the proposed Addendum…."

189.     Thus, when it came time for closing, BGHN could have extracted additional concessions from the owner of Counterclaimant KUA because it could not obtain from Bridgeview an

acknowledgment as to the invalidity of the right of first refusal, since BGHN controlled when Bridgeview would provide that acknowledgment.

190.     When parties have levied on a property an invalid right of first refusal, the measure of damages is the value of the entire property.  The Property is worth at least $220,000.

### COUNTERCLAIM I AGAINST BGHN, BRIDGEVIEW AND LYONS: EQUITABLE COMMON LAW ACTION TO QUIET TITLE

191.     Counterclaimant KUA incorporates all of the previous paragraphs of its Counterclaim Pleading as if fully set forth herein.

192.     Counterclaimant KUA owns all 47 acres of the Property.

193.     Counterclaimant KUA is in actual possession of the Property.

194.     Counterclaim Defendants BGHN, Bridgeview and Lyons claim interests (which are invalid) in approximately ten acres of the Property (specifically the Heliport) which are adverse to Counterclaimant KUA's interest in the Property.

195.     First, Counterclaim Defendants BGHN, Lyons and Bridgeview first claim the Fake September 19, 2018 Lease is a valid lease (which it is not), which is adverse to the interests of Counterclaimant KUA since the Counterclaim Defendants are claiming it gives them possessory rights and other rights over the Property.

196.     Second, Counterclaim Defendants BGHN, Lyons and Bridgeview claim there exists rights of first refusal (including an invalid right of first refusal to purchase the Heliport) over the Heliport under the Fake September 19, 2018 Lease, and these claims of rights of first refusal are adverse to the interests of Counterclaimant KUA.

197.     The Fake September 19, 2018 Lease and the claimed rights of first refusal in this document are all invalid.

198.     Third, Counterclaim Defendant BGHN and Bridgeview claim the adverse interest,

that if Bridgeview is evicted,     REDACTED

199.     BGHN and Bridgeview claims this adverse interest arises under the alleged invalid sublease and invalid Non-Disturbance Agreement.

200.     The inability to     REDACTED

201.     These claimed adverse and invalid interests arouse after BGHN and Bridgeview learned that Counterclaimant KUA intended to sell the Property (the Heliport occupies a portion of the Property).

202.     Fourth, Counterclaimant BGHN and Bridgeview claim the adverse interest of being able to remain at the Heliport despite being evicted and have no legal right to remain at the Heliport.

203.     Counterclaimant BGHN and Bridgeview claim their adverse interests to remain at the Heliport arise under the: the Fake September 19, 2018 Lease; the Non-Disturbance Agreement; BGHN's alleged sublease; and the Actual September 14, 2018 Lease.

204.     The first three agreements are invalid, and even if valid, all four agreements have been breached by BGHN and Bridgeview.

205.     Bridgeview's and BGHN's unlawful occupancy of the Heliport and claimed invalid rights are adverse to Counterclaimant KUA's property interest.

206.     Counterclaimant KUA is entitled to a judgment declaring that Counterclaimant KUA holds the entire Property free of any interests claimed by BGHN, Lyons and Bridgeview; all of BGHN's, Lyon's, and Bridgeview's claimed interest over the Heliport  (and/or any portion of the Property) are invalid and such other relief as the Court deems proper.

**COUNTERCLAIM II AGAINST BGHN, BRIDGEVIEW AND LYONS: QUIET TITLE PURSUANT TO NY CLS RPAPL § 1501**

207.     Counterclaimant KUA incorporates all of the previous paragraphs of its Counterclaim Pleading as if fully set forth herein.

208.     Counterclaimant KUA owns all 47 acres of the Property.

209.     Counterclaimant KUA is in actual possession of the Property.

210.     Counterclaim Plaintiff KUA acquired the 47 acres pursuant to two separate deeds. First, KUA acquired 10.11 acres that make up the Property pursuant to a deed dated October 26, 1987, and recorded November 9, 1987 at Liber 1769, cp 266.  Second, KUA acquired the remaining 36.90 acres of that makes up the Property pursuant to a deed dated June 27, 1997 and recorded July 8, 1997 at Liber 2699, cp 266, in the Ulster County Clerk's Office.

211.     Counterclaim Defendants BGHN, Bridgeview, and Lyons claim interests (which are invalid) in approximately ten acres of the Property (specifically the Heliport) which are adverse to Counterclaimant KUA's interest in the Property.

212.     Counterclaim Defendants BGHN, Bridgeview and Lyons claim they have the following interests in the Heliport: Bridgeview holds a right of first refusal to all future leases; Bridgeview holds a right of first refusal to purchase the Heliport; Bridgeview holds a right of first refusal to lease additional space within the Heliport. Bridgeview; BGHN holds a right of first refusal to continue to occupy the Heliport;     REDACTED

; BGHN can remain at the Heliport even though it breached its alleged sublease (if it exists); Bridgeview can remain at the Heliport even though it breached its lease.

213.     All of these claimed interests are adverse to Counterclaimant KUA as the owner of the Heliport including because they interfere with its right to sell the Heliport to anyone of its

28

choosing; lease the Heliport to anyone of its choosing;     REDACTED                        ;
only have any tenant at the Heliport that has a valid lease and has not breached such lease; and enjoy
all the rights of any other property owner.

214.     None of the Counterclaim Defendants are legally incompetent.

215.     All interested parties are named and judgment will not affect other persons not
named.

216.     Counterclaimant KUA is entitled to a judgment declaring that Counterclaimant
KUA holds the entire Property free of any interests claimed by BGHN, Bridgeview and Lyons; all of
BGHN's, Bridgeview's and Lyon's claimed interest over the Heliport (and/or any portion of the
Property) are invalid and such other relief as the Court deems proper.

## COUNTERCLAIM III AGAINST BGHN, BRIDGEVIEW, LYONS AND SEWARD: INJURY TO PROPERTY

217.     Counterclaimant KUA incorporates all of the previous paragraphs of its
Counterclaim Pleading as if fully set forth herein.

218.     By creating, asserting the validity of and/or interfering with the removal of, the
invalid right of first refusals in the Fake September 19, 2018 Lease Counterclaimant Defendants
BGHN, Bridgeview, Lyons and Seward have injured Counterclaimant KUA's property.

219.     By creating, asserting the validity of, and/or interfering with the removal of, the
Fake September 19, 2018 Lease Counterclaim Defendants BGHN, Bridgeview, Lyons and Seward
have injured Counterclaimant KUA's property.

220.     Counterclaim Defendants BGHN, Bridgeview, Lyons and Seward have injured
Counterclaimant KUA's property by creating and/or asserting the validity of the claim that

REDACTED

221.     BGHN, Bridgeview, Lyons and Seward actions have caused damages because the

Heliport is clouded with invalid rights of first refusal and the claim that     REDACTED

222.      Counterclaimant KUA is entitled to compensatory and direct damages, consequential damages, punitive damages, pre-judgment and post-judgment interests, costs, attorney fees and litigation expenses and such other relief as the Court deems just.

### COUNTERCLAIM IV AGAINST BGHN, BRIDGEVIEW, LYONS AND SEWARD: TORTIOUS INTERFERENCE WITH PROPERTY RIGHTS

223.      Counterclaimant KUA incorporates all of the previous paragraphs of its Counterclaim Pleading as if fully set forth herein.

224.      Counterclaimant Defendants BGHN, Lyons, Bridgeview and Seward   tortiously interfered with Counterclaimant's KUA property rights by (a) creating and/or asserting rights under the Fake September 19, 2019 Lease (which is invalid); (b) their unlawful activity in creating, and/or refusing to allow Counterclaimant KUA to be  released from the Fake September 19, 2018 Lease and the invalid rights of first refusal in the Fake September 19, 2018 Lease; (c)     REDACTED

and (d) remaining at the Heliport after being evicted.

225.      BGHN, Bridgeview, Lyons and Seward actions have caused damages because the Heliport (which occupies a part of the Property) is clouded with invalid rights of first refusal and the claim that     REDACTED

226.      Counterclaimant KUA is entitled to compensatory and direct damages, consequential damages, punitive damages, pre-judgment and post-judgment interests, costs, attorney fees and litigation expenses and such other relief as the Court deems just.

**COUNTERCLAIM V AGAINST SEWARD: BREACH OF FIDUCIARY DUTY**

227.     Counterclaimant KUA incorporates all of the previous paragraphs of its Counterclaim Pleading as if fully set forth herein.

228.     As the former Financial Director and Comptroller Seward owed a fiduciary duty to Counterclaimant KUA.

229.     Seward committed misconduct/breached her fiduciary duty by participating and assisting in the creation of the Fake September 19, 2018 Lease.

230.     Seward also committed misconduct/breached her fiduciary duty by signing the Non-Disturbance Agreement under which, in conjunction with the alleged sublease,     REDACTED

231.     Seward's actions have caused damages because the Heliport is clouded with invalid rights of first refusal and claims that     REDACTED

232.     Counterclaimant KUA is entitled to compensatory and direct damages, consequential damages, punitive damages, pre-judgment and post-judgment interests, costs, attorney fees and litigation expenses and such other relief as the Court deems just.

**COUNTERCLAIM VI AGAINST BGHN, BRIDGEVIEW AND, LYONS: INDUCING/AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY**

233.     Seward breached her fiduciary duty to Counterclaimant KUA.

234.     Bridgeview, Lyons, and BGHN knowingly induced or participated in the breach.

235.      Bridgeview, Lyons, and BGHN all knew that Counterclaimant KUA was seeking to sell the Property and other parcels as a package deal.

236.     Bridgeview, Lyons, and BGHN all knew that the  Fake September 19, 2018 Lease, along with the invalid right of first refusals within it, where invalid given that Bridgeview, Lyons and

31

BGHN had all executed documents in 2019 that only refer to the Actual September 14, 2018 Lease.

237.     Bridgeview, Lyons and BGHN all knew that     REDACTED

238.     On information and belief, in exchange for payment, housing, as part of a personal relationship and/or other benefits, Bridgeview, Lyons, and BGHN knowingly induced Seward to breach her fiduciary duty to assist/participate with the creation of the Fake September 19, 2018 Lease and to sign the Non-Disturbance Agreement.

239.     Bridgeview, Lyons, and BGHN all committed misconduct by their involvement with the Fake September 19, 2018 Lease and the Non-Disturbance Agreement.

240.     BGHN's, Bridgeview's, and Lyons' actions have caused damages because the Heliport (which occupies a part of the Property) is clouded with invalid rights of first refusal and the claim that     REDACTED

241.     Counterclaimant KUA is entitled to compensatory and direct damages, consequential damages, punitive damages, pre-judgment and post-judgment interests, costs, attorney fees and litigation expenses and such other relief as the Court deems just.

### COUNTER CLAIM VII AGAINST DEFENDANTS BRIDGEVIEW, LYONS, BGHN AND SEWARD-CIVIL CONSPIRACY

242.     Counterclaimant KUA incorporates all of the previous paragraphs of their Counterclaim Pleading as if fully set forth herein.

243.     Counterclaim Defendants Bridgeview, Lyons, BGHN and Seward knew that in 2019 Counterclaimant intended to sell the Property (the Heliport is located on a portion of the Property).

244.     In late summer of 2019, Counterclaim Defendants BGHN, Bridgeview and Lyons

all expressed their interest in buying the Heliport (which is located on the Property).

245.     On July 29, 2019, a Word (and unsigned) version of the Fake September 19, 2018 lease was emailed by Seward to Lyons/Bridgeview.

246.     In 2019, Counterclaim Defendants BGHN, Bridgeview and Lyons all executed documents which reflect they knew the only valid lease between Bridgeview and Counterclaimant KUA is the Actual September 14, 2018 Lease (which has no right of first refusal).

247.     As of 2020 Counterclaim Defendants BGHN, Lyons and Bridgeview have now all asserted, claimed and/or sought to use to its advantage, the invalid rights of first refusals in the Fake September 19, 2018 Lease.

248.     An invalid right of first refusal is a cloud on title and deters a bona fide buyer from closing on the purchase of the Property because they do not want the hassle of the litigation costs to remove an invalid right of first refusal.

249.     Moreover, no consideration was ever paid for the rights of first refusals (which are invalid anyway).

250.     Counterclaim Defendant BGHN and Bridgeview claim to have entered into an alleged sublease which      REDACTED

No true third parties would ever enter into any such agreement.

251.     Counterclaim Defendant BGHN drafted a Non-Disturbance Agreement which provides that if Bridgeview is evicted "the [alleged] Sublease will continue in full force and effect as a direct lease" with Counterclaimant KUA.

252.     Thus, the effect of the alleged sublease and Non-Disturbance Agreement

REDACTED

253.     On information and belief Seward and Lyons (the owner of Bridgeview), were involved in a personal relationship in the summer of 2019 and Seward lived in Lyons' house.

254.     In 2019 Seward claimed to be suffering from financial problems.

255.     In July of 2019 Seward reported that Lyons, the owner of Bridgeview, paid her money which on information and belief was between $8,000 to $10,000.

256.     Bridgeview/Lyons and BGHN have had some form of business relationship since at least 2014.

257.     On information and belief  BGHN, Bridgeview, Lyons and Seward had a corrupt agreement to take actions to make title to the Property (or the Heliport which is located on the Property) unmarketable and/or undesirable.

258.     On information and belief BGHN, Bridgeview, Lyons and Seward had a corrupt agreement to take actions to force Counterclaimant KUA to sell the Property (or the Heliport which occupies a portion of the Heliport) to BGHN, Bridgeview or Lyons.

259.     On information and belief,  BGHN, Bridgeview, Lyons and Seward had a corrupt agreement to create the Fake September 19, 2018 Lease and the invalid right of first refusals in 2019 in the Fake September 19, 2018 Lease (that they falsely claimed existed in 2018) and/or to have BGHN, Bridgeview and/or Lyons use them their advantage.

260.     On information and belief,  BGHN, Bridgeview, Lyons and Seward had a corrupt agreement in creating the alleged sublease and Non-Disturbance Agreement to provide the claim

REDACTED

261.     By creating, assisting in the creation of and/or interfering with the removal of, the invalid right of first refusals in the Fake September 19, 2018 Lease (which hinder the sale of the Property); the Fake September 19, 2018 Lease (which contains the invalid rights of first refusal); and

the alleged sublease and Non-Disturbance Agreement      REDACTED

Bridgeview, Lyons, BGHN and

Seward have committed the following torts: injury to property, inability to have quiet title (under both

the  NY RPAPL §1501 *et seq*. and common law), tortious interference with property rights, breach of

fiduciary duty and inducing breach of fiduciary duty.

262.      BGHN, Bridgeview, Lyons and Seward all engaged in overt acts in creating,

asserting rights under and/or preventing the removal of, the Fake September 19, 2018 Lease; the

invalid rights of first refusals under the Fake September 19, 2018 Lease; the alleged sublease and Non-

Disturbance Agreement.

263.      BGHN, Bridgeview, Lyons and Seward all intentionally participated in creating,

asserting rights under and/or preventing the removal of, the Fake September 19, 2018 Lease; the

invalid rights of first refusals under the Fake September 19, 2018 Lease; and the alleged sublease and

Non-Disturbance Agreement.

264.      BGHN, Bridgeview, Lyons and Seward intentionally participated in the agreed

plan in creating, asserting rights under and/or preventing the removal of, the Fake September 19, 2018

Lease; the invalid rights of first refusals under the Fake September 19, 2018 Lease; and the alleged

sublease and Non-Disturbance Agreement.

265.      BGHN, Bridgeview, Lyons and Seward actions have caused damages because the

Heliport (which occupies a portion of the Property) is clouded with invalid rights of first refusal and

the claim that Counterclaimant KUA      REDACTED


266.      Counterclaimant KUA is entitled to compensatory and direct damages,

consequential damages, punitive damages, pre-judgment and post-judgment interests, costs, attorney

fees and litigation expenses and such other relief as the Court deems just.

**COUNTERCLAIM VIII AGAINST BGHN AND BRIDGEVIEW:
DECLARATORY JUDGMENT FOR BREACH OF LEASE AND ALLEGED
SUBLEASE (IF IT EXISTS)**

267.     Counterclaimant KUA incorporates all of the previous paragraphs of its Counterclaim Pleading as if fully set forth herein.

268.     BGHN seeks a declaration that neither "Bridgeview nor BGHN are in breach of any lease agreement…."

269.     Counterclaimant KUA seeks a declaratory judgment that BGHN does not have a valid sublease and thus must vacate the Heliport.

270.     Counterclaimant KUA seeks a declaratory judgment Bridgeview is in breach of its lease and that it is terminated and that if BGHN actually has a sublease, a declaratory judgment that BGHN is in breach of its sublease agreement and it is terminated.

271.     As set forth above, Bridgeview violated/breached its lease including by: (a) disturbing the soil and altering the Heliport without Counterclaimant KUA's permission (disturbances were done in 2020 with bulldozers); (b) constructing and operating a heliport on a portion of the Property without complying with the rules and regulations of the FAA; (c) failing to comply with its insurance requirements by having in place the required insurance, naming Counterclaimant KUA as an additional insured on its polices and providing Counterclaimant KUA the required endorsements; (d) operating helicopters from the heliport when the heliport was never approved by the FAA and by accessing an adjacent airport (owned by Counterclaimant KUA) without an FAA required through the fence agreement; (e) committing various torts plead in this pleading (which are unlawful); (f) participation in creating the alleged sublease and the Non-Disturbance Agreement which under these combined agreements     REDACTED

REDACTED                          ; (g) interfering with the sale of the Property/Heliport; (h)

unlawful participation in the creation of the Fake September 19, 2018 Lease;  and (i) unlawful activity

in creating, and/or refusing to allow be released, invalid rights of first refusal.  For all of these reasons

in (a) to (i) Bridgeview is in breach of its Actual September 14, 2018 Lease. Further, even if the Fake

September 19, 2018 Lease were valid (which it is not) Bridgeview is in breach of that document for the

reasons set forth in (a) to (g) above.

272.    Additionally, Bridgeview's breached the covenant of good faith and fair dealing in

the Actual September 14, 2018 Lease by its: (a) unlawful participation in the creation of the Fake

September 19, 2018 Lease; (b) unlawful activity in creating, and/or refusing to allow Counterclaimant

KUA to be  released from the Fake September 19, 2018 Lease and the invalid rights of first refusal in

the Fake September 19, 2018 Lease; (c) commission of various torts (plead in this complaint) which

are unlawful; (d) participation in creating the alleged sublease and the Non-Disturbance Agreement

which under these combined agreements    REDACTED

                                         ; (e) interfering with the sale of the

Property/Heliport and (f) signing an unconscionable sublease. Further, even if the Fake September 19,

2018 Lease were valid (which it is not) Bridgeview is also in breach of the covenant of good faith and

fair dealing in that document for the reasons set forth in (c) to (e) above.

273.    Bridgeview's lease is the Actual September 14, 2018 Lease.  While the Fake

September 19, 2018 Lease is invalid, even if the Court were to conclude otherwise, Bridgeview is in

breach of that document for the reasons it is in breach of the Actual September 14, 2018 Lease.

274.    Further, while the Fake September 19, 2018 Lease is invalid, along with the rights

of first refusals within it

275.    As BGHN does not have a fully executed sublease it has no right to occupy the

Heliport and thus must vacant the Heliport.

276.     Even if BGHN does have a fully executed sublease it is in breach of it by: (a)

REDACTED

277.     Further, if BGHN does have a fully executed sublease it is in breach of it by its breach of the covenant of good faith and fair dealing for all the reasons listed in (a) to (f) of the prior paragraph.

278.     Counterclaimant KUA is entitled to a declaratory judgment that (a) Bridgeview is in breach of its lease and BGHN is in breach of its sublease (if it exists), (b) such leases are terminated; and (c) Counterclaimant KUA as the Landlord, is entitled exclusive and "use and occupancy" and BGHN and Bridgeview must vacate the Heliport/Property.

279.     Counterclaimant KUA is entitled to a declaratory judgment that it is entitled to recover reasonable attorneys' fees and expenses from Bridgeview and BGHN and such other relief as the Court deems proper.

### COUNTERCLAIM IX AGAINST BGHN AND BRIDGEVIEW: ACTION TO RECOVER REAL PROPERTY

280.     Counterclaimant KUA incorporates all of the previous paragraphs of its

Counterclaim Pleading as if fully set forth herein.

281.    As set forth above, Bridgeview is in breach of its lease agreement.

282.    As set forth above, BGHN is in breach of its sublease agreement (if it exists).

283.    Therefore, pursuant to Article 6 of the Real Property and Actions Proceedings Law, Counterclaimant KUA is entitled to a judgment ordering it exclusive possession of the Heliport; an order that BGHN and Bridgeview are ejected from the Heliport; and such other relief as the Court deems proper.

### COUNTERCLAIM X AGAINST BRIDGEVIEW AND BGHN: BREACH OF CONTRACT-LEASE AND SUBLEASE (IF IT EXISTS)

284.    Counterclaimant KUA incorporates all of the previous paragraphs of its Counterclaim Pleading as if fully set forth herein.

285.    BGHN incorrectly claims "neither BGHN nor Bridgeview is in breach of any lease agreement…."

286.    The contract between Counterclaimant KUA and Bridgeview is the Actual September 14, 2018 Lease.

287.    As set forth above, Bridgeview is in breach of the Actual September 14, 2018 Lease, including breach of the covenant of good faith and fair dealing in its lease.  Even if the Court were to conclude that the Fake September 19, 2018 Lease was a valid lease (which it is not), Bridgeview is in breach of it, including breach of the covenant of good faith and fair dealing in its lease.

288.    As set forth above, BGHN is in breach of its sublease agreement/contract (if it exists), including breach of the covenant of good faith and fair dealing in its lease.

289.    Counterclaimant KUA is entitled to compensatory and direct damages, consequential damages, punitive damages, pre-judgment and post-judgment interests, costs, attorney

fees and litigation expenses and such other relief as the Court deems just.

### COUNTERCLAIM XI AGAINST BRIDGEVIEW AND BGHN: DECLARATORY JUDGMENT THAT THE NON-DISUTRBANCE AGREEMENT IS INVALID

290.     Counterclaimant KUA incorporates all of the previous paragraphs of its Counterclaim Pleading as if fully set forth herein.

291.     The Non-Disturbance Agreement is dated August 20, 2019, but the notary block for every signature is after August 20, 2019.

292.     No consideration was paid to Counterclaimant KUA for the Non-Disturbance Agreement.

293.     Seward signed the Non-Disturbance Agreement after she ceased to be an employee of Counterclaimant KUA.

294.     Seward did not have the authority to bind Counterclaimant KUA to agreements under which BGHN    REDACTED

295.     At the time Seward signed the Non-Disturbance Agreement she was working in concert with BGHN, Lyons and Bridgeview in the commission of various torts against Counterclaimant.

296.     The Non-Disturbance Agreement is unconscionable as it purports to create authority that if Bridgeview is evicted    REDACTED

297.     Counterclaimant KUA is entitled to a declaratory judgment that the Non-Disturbance Agreement is invalid and such other relief as the Court deems proper.

### COUNTERCLAIM XII AGAINST BRIDGEVIEW AND BGHN: BREACH OF CONTRACT OF THE NON-DISTURBANCE AGREEMENT

298.     If the Court were to determine that the Non-Disturbance Agreement is actually a

valid contract (which it is not), Bridgeview breached the Non-Disturbance Agreement by breaching its Actual September 14, 2018 Lease.  Further, even if the Fake September 19, 2018 Lease were a valid lease (which it is not), Bridgeview Breached the Non-Disturbance Agreement by breaching the Fake September 19, 2018 Lease.

299.     If the Court were to determine that the Non-Disturbance Agreement is actually valid, BGHN breached the Non-Disturbance Agreement by breaching its alleged sublease (if it exists).

300.     Further, both Bridgeview and BGHN breached the Non-Disturbance Agreement by their breach of the covenant of good faith and fair dealing by their: (a) unlawful participation in the creation of the Fake September 19, 2018 Lease; (b) their unlawful activity in creating, and/or refusing to allow Counterclaimant KUA to be  released from the Fake September 19, 2018 Lease and the invalid rights of first refusal in the Fake September 19, 2018 Lease; (c) commission of various torts (plead in this complaint) which are unlawful; and (d) interfering with the sale of the Property.

301.     Counterclaimant KUA is entitled to compensatory and direct damages, consequential damages, punitive damages, pre-judgment and post-judgment interests, costs, attorney fees and litigation expenses and such other relief as the Court deems just.

### COUNTERCLAIM XIII AGANST BRIDGEVIEW AND BGHN: NON-DISTURBANCE AGREEMENT VIOLATES NY CLS Real P § 235-c AND MUST BE REFORMED

302.     Counterclaimant KUA incorporates all of the previous paragraphs of its Counterclaim Pleading as if fully set forth herein.

303.     To the extent that Court finds that the Non-Disturbance Agreement is not terminated in this case, it must be reformed at it is unconscionable.

304.     At the time Seward signed the Non-Disturbance Agreement she was working in concert with BGHN and Bridgeview in the commission of various torts against Counterclaimant.

305.     Further, Seward signed the Non-Disturbance Agreement after she had been terminated.

306.     The Non-Disturbance Agreement provides that if Bridgeview's lease is terminated, the alleged sublease will continue as a direct lease with Counterclaimant KUA.

307.     Section 3.A. of the alleged sublease provides     REDACTED

which is grossly unreasonable and unconscionable.

308.     The Non-Disturbance Agreement is unconscionable as it purports to create authority that if Bridgeview is evicted     REDACTED

309.      No consideration was paid for the Non-Disturbance Agreement.

310.     Even if the consideration were paid, it is grossly inadequate.

311.     Therefore, pursuant to NY CLS Real P § 235-c. the Non-Disturbance Agreement must therefore be set aside and/or reformed to provide that if Bridgeview's lease is terminated,

REDACTED                                          and such other relief as the Court deems proper.

### COUNTERCLAIM XIV AGAINST COUNTERCLAIM DEFENDANTS BGHN AND BRIDGEVIEW: DECLARATORY JUDGMENT TO DECLARE THE FAKE SEPTEMBER 19, 2018 LEASE INVALID AND THE RIGHTS OF FIRST REFUSALS THEREIN AS INVALID

312.     Counterclaimant KUA incorporates all of the previous paragraphs of its Counterclaim as if fully set forth herein.

313.     Counterclaim Defendants Bridgeview and BGHN claim the Fake September 19, 2018 Lease is a valid lease.

314.     Counterclaim Defendants claim the rights of first refusal (which are invalid) in the Fake September 19, 2018 Lease are valid.

315.     Counterclaim Defendants Bridgeview and BGHN know the Fake September 19,

2018 Lease (and the rights of first refusal in it) are invalid.

316.     Moreover, Counterclaimant KUA was not provided any consideration for the rights of first refusals.

317.     Counterclaimant KUA is entitled to a declaratory judgment that the Fake September 19, 2018 Lease is invalid and of no legal effect; that the rights of first refusals in the Fake September 19, 2018 Lease are invalid and of no legal effect; and such other relief as the Court deems proper.

### COUNTERCLAIM XV AGANST BRIDGEVIEW AND BGHN: FAKE SEPTEMBER 19, 2018 LEASE VIOLATES NY CLS Real Property § 235-c AND MUST BE REFORMED

318.     Counterclaimant KUA incorporates all of the previous paragraphs of its Counterclaim Pleading as if fully set forth herein.

319.     To the extent that Court finds that the Fake September 19, 2018 Lease is not invalid, it must be reformed at it is unconscionable.

320.     At the time Seward signed the Fake September 19, 2018 Lease she was working in concert with BGHN and Bridgeview in the commission of various torts against Counterclaimant.

321.     The Fake September 19, 2018 Lease provides for no deadline upon when a response as to whether Bridgeview needs to exercise any of the rights of first refusal in Sections 3, 13 and 21.

322.     No consideration was paid for the rights of first refusals in the Fake September 19, 2018 Lease.

323.     Therefore, pursuant to NY CLS Real P § 235-c. the  Fake September 19, 2018 Lease, if deemed vailed, must be reformed to  (a) provide a deadline for when the right of first refusals must be exercised and such deadline should be within five (5) days of Counterclaimant KUA providing a copy of the sales contract with a third party to Bridgeview; (b) provide that any rights of first refusals are waived if not exercised; (c) make clear that on the sale of the Property as a whole, or the stock of

Counterclaimant KUA, any rights of first refusals within it are not triggered; and (d) such other relief as the Court deems proper.

## COUNTERCLAIM XVI AGANST BRIDGEVIEW AND BGHN: DECLARATORY JUDGMENT REGARDING FAKE SEPTEMBER 19, 2018

324.     Counterclaimant KUA incorporates all of the previous paragraphs of its Counterclaim Pleading as if fully set forth herein.

325.     Bridgeview and BGHN have asserted and/or refused to allow to be invalidated the rights of first refusals in the Fake September 19, 2018 Lease.

326.     Even if the Court were to find that the right of first refusal in Section 13 of the Fake September 19, 2018 Lease Agreement was valid, it does not apply to the sale of the Property as a whole or the stock of Counterclaimant KUA.

327.     While the Fake September 19, 2018 Lease is invalid, if the Court determines otherwise, then Counterclaimant KUA is entitled to a declaratory judgment that the rights of first refusals within it are not triggered on a sale of the Property as a whole or the sale of the stock of Counterclaimant KUA and such other relief as the Court deems proper.

## COUNTERCLAIM XVII AGANST BRIDGEVIEW AND BGHN: ALLEGED SUBLEASE VIOLATES
## NY CLS Real Property § 235-c AND MUST BE REFORMED

328.     Counterclaimant KUA incorporates all of the previous paragraphs of its Counterclaim Pleading as if fully set forth herein.

329.     To the extent that Court finds that BGHN's alleged sublease and/or the Non-Disturbance Agreement is valid and/or not terminated, the alleged sublease must be reformed at it is unconscionable.

330.     At the time BGHN and Bridgeview/Lyons allegedly entered into the alleged sublease they were committing torts against Counterclaimant KUA.

331.      Section 3      REDACTED


332.      Therefore, pursuant to NY CLS Real P § 235-c. the alleged sublease (if valid), must

be reformed to provide      REDACTED


## COUNTERCLAIM XVIII AGANST BRIDGEVIEW: DECLARATORY JUDGMENT REGARDING THE ALLEGED SUBLEASE

333.      Counterclaimant KUA incorporates all of the previous paragraphs of its

Counterclaim Pleading as if fully set forth herein.

334.      Section 2      REDACTED


335.      To the extent that Court finds that BGHN's alleged sublease is valid and/or not

terminated, Counterclaimant KUA seeks a declaratory judgment      REDACTED


## REQUEST FOR RELIEF:

336.      As to Bridgeview, Lyons and BGHN, Counterclaimant KUA demands judgment

against them for: (a) compensatory and direct damages; (b) consequential damages; (c) punitive

damages; (d) diminution in value damages; (e) pre-judgment and post judgment interest; (f) costs; (g)

attorney fees and expenses; (h) special damages; (i) declaratory judgment that Bridgeview, Lyons and

BGHN do not hold any, and  may not assert any, right of first refusal over the Heliport or any portion

of the Property; (j) declaratory judgment that the Fake September 19, 2018 Lease is invalid and of no

legal effect; (k) in the event the Court does not invalidate the Fake September 19, 2018 Lease, declare

that no right of first refusals exist on a sale of the entire Property or a sale of the stock of

Counterclaimant KUA;  (l) declaratory judgment that the Non-Disturbance Agreement is invalid and of no legal effect; (m) declaratory judgment that Bridgeview breached its lease and BGHN breached its sublease (if it exists); (n) declaratory judgment that the termination of Bridgeview's  lease and BGHN's sublease (if it exists) was lawful and appropriate and that the lease and sublease (if it exists) are at an end and Counterclaim Defendants BGHN and Bridgeview must vacate and/or be removed from the Heliport; (o) declaratory judgment that Bridgeview, Lyons and BGHN have no interest in the Heliport (or any portion of the Property) and that Counterclaimant KUA is the only entity/person that has an interest the Heliport and the Property); (p) declaratory judgment for any fees, fines or penalties imposed by the FAA due to their unlawful operation of aircraft from the Heliport; (q) order declaring that they indemnify Counterclaimant KUA under common law and the Actual September 14, 2018 lease and alleged sublease (if it exists) for any fees, fines or penalties imposed by the FAA due to their unlawful operation of aircraft from the Heliport; (r) issue a warrant to remove BGHN and Bridgeview from the Heliport; (s) declaratory judgment that the Fake September 19, 2018 Lease, the Non-Disturbance Agreement and alleged sublease (if they are valid), are unconscionable and are to be reformed; (t) declaratory judgment that there is no renewal of the alleged sublease once Bridgeview's lease is terminated;  and (u) such other relief as the Court deems proper.

337.     In addition to the relief requested above, Counterclaimant KUA also demands judgment against Bridgeview for: (a) payment totaling to: 120% of Bridgeview's monthly rent times the number of months Bridgeview remains at the Heliport after June 10, 2020; (b) order declaring that Bridgeview is required to indemnify Counterclaimant KUA at common law and under the Actual September 14, 2018 Lease for its unauthorized disturbances of the Property, including its soil; (c) pay the costs of restoration due to Bridgeview's unauthorized disturbances of the land; (d) declaratory judgment for any fees, fines or penalties imposed by the FAA for constructing the Heliport without

FAA approval; (e) order declaring that it indemnify Counterclaimant KUA under common law and the Actual September 14, 2018 lease and alleged sublease (if it exists) for any fees, fines or penalties imposed by the FAA due to its construction of a Heliport without FAA approval; (f) payment of all expense to remove the helipad if it is not approved by the FAA and restore the land on which the helipad sits to its original condition; and (g) such other relief as the Court deems proper.

338.    As to Seward Counterclaimant KUA demands judgment against her for: (a) compensatory and direct damages; (b) consequential damages; (c) punitive damages; (d) diminution in value damages; (e) pre-judgment and post judgment interest; (f) costs; (g) attorney fees and expenses; (h) special damages; and (i) such other relief as the Court deems proper.

## JURY TRIAL DEMANDED

Defendant demands a trial by jury on the claims triable by a jury.


/s/Robert Lakind
Attorney Bar No.:  RL3954
*Attorney for Defendant*
SZAFERMAN, LAKIND,
  BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Ste, 200
Lawrenceville, NJ  08648
(609)275-0400; Fax (609)275-4511
rlakind@szaferman.com


DATED:      July 27, 2020